## Case No. 17,119.

### WALTER v. The KAMCHATKER.

[2 Betts, D. C. MS. 69.]

District Court, S. D. New York. Nov. 5, 1841.

LIBEL FOR SEAMEN'S WAGES—CONTRACT — PER-FORMANCE—DISCHARGE FOR INSUBORDINATION.

[1. Libellant contracted with the owners of a steamship to work on board, at putting in her machinery, at the rate of $15 per month, and if, on her completion, he should engage to go on her voyage as a fireman, he should have $30 per month, during the time he worked in port as well as on the voyage. Disagreements arose, and libellant either left the ship, or was discharged, before her completion. After she was ready for sea, he made no tender of his services for the voyage. *Held* that, in the absence of such tender, he could not claim to have been attached to the vessel so as to be entitled to a seaman's wages, and his remedy, if any, was by action at law.]

[2. Even if the agreement should be regarded as perfected, the refusal of libellant to accept orders from any engineers or superintendents but the engineer in chief was sufficient to justify his discharge from the ship.]

[This was a libel by James Walter against the steamship Kamchatker (George Schuyler, claimant) to recover wages.] The libellant entered into a contract with the proprietors of the steamship Kamchatker to work on board her, in putting in and completing her machinery, at the rate of $15 per month, or $^{50}/_{100}$ per day, with the condition that after her completion, if he should engage to go in her on her voyage to Russia as fireman, and should sign the regular shipping agreement for such voyage, then he should be entitled to the pay of $30 per month, during the time he worked upon the vessel in port as well as during the voyage. Libellant avers his readiness and willingness to perform the whole contract, and that he was in discharge of it in port, by working on board in port until he was wrongfully discharged from the vessel by the claimants or their agents, and he demands $30 per month for the time he was employed in the service of the vessel, and his damages for breach of the contract. The answer alleges that the libellant, whilst employed on board at labor, became refractory, and abusive to the officer, and refused to obey the proper orders given him in respect to necessary work on board, and that he left the ship voluntarily, without finishing the work on which he was employed, and long before the ship was ready for sea.

Mr. Benedict, for libelant.

Mr. Bowdoin, for claimant.

BY THE COURT. The libellant's right to recover in this action rests exclusively on the services performed by him as a laborer on board the Kamchatker whilst lying at the wharf on the New Jersey side of the river. There is no pretence that he has tendered his services since the completion of the ship's machinery to go to sea. or to sign shipping articles. He assumes, first, that the contract throughout was of a maritime character; and,

secondly, that he has been wrongfully prevented by the claimant or his agent from performing it in full, and that, therefore, he is to be compensated by full wages for the time he labored on board, and by damages for the loss of the voyage.

When a contract is an entirety, looking to services at sea as the chief consideration, admiralty courts regard services in port preparatory to the voyage as coming within the contract. and entitled to the same remedy. Jones v. Davis [Case No. 7,460]. And, when rendered on board the ship, no objection would be allowed that it was not necessarily connected with the duties of a sailor. Accordingly, had the libellant established a hiring for the voyage, he would be entitled to claim, as part of the wages of such voyage, a compensation for his time and labor employed on board in fitting out the ship, as well if he was engaged on her machinery as if employed about her spars, rigging, or sails. But the agreement shown by the proofs was of a different character. The libellant had not yet bound himself to the ship. There was a provisionary or probatory contract antecedent to the inception of the agreement for the voyage; and, if it be urged that the claimants were bound to accept the engagement of the libellant, it certainly must be conceded that he was under no compulsion to proffer and complete it. He was at full liberty to withdraw from the service at any time before executing the agreement binding him to the voyage. The arrangement, then, throughout, must be regarded as of such separable character. The libellant was not to be enlisted or bound to the vessel until the final contract should be signed or adopted on his part. He could leave his employment there the same as if on shore. The obligation of the parties must necessarily be interpreted as reciprocal in its operation. And the plain sense and equity of the arrangement concur in affixing to it the meaning that for work done in part as a laborer the libellant should be paid merely as a laborer having no fixed connection with the vessel, and that after such work was finished, if he chose to undertake the voyage, then the pay should be doubled, and made equal to his wages at sea $30 per month. As the libellant did not execute the contract, or offer to do it, after the ship was made ready for sea, he cannot now claim to have been attached to her so as to secure a seaman's privileges to himself. Whatever remedy he may be entitled to for services performed, or for a wrongful violation of that part of his agreement, must be enforced in a court of law.

In the second place, if this court was authorized to regard the agreement as perfected. and the services rendered by the libellant as performed in part execution of it, I think. upon the proofs, that his conduct on board was so far disorderly and insubordinate as to justify his discharge from the vessel. It cannot be maintained that in a service so extended as to particulars, and about a ship of the

extraordinary dimensions of this frigate, the libellant would refuse obedience to the orders of all the superintendents and engineers other than given directly by the chief engineer. The absurdity of a claim of that character is too gross to require any formal refutation. When, then; he took ground that he would not remain or obey orders given him by any one except the chief engineer, that officer might most rightfully refuse to continue him in his employment, and he would on such discharge forfeit every claim to the contingent and prospective advance of wages. That advance was not to be absolute, but rested on a condition which the libellant must show he has satisfied before he can demand anything more than the compensation stipulated for the mere labor in port. In my opinion, therefore, this action cannot be maintained, and the libel must be dismissed, with costs.